McNAB and another *v.* NATHAN MANUF'G Co.

*(Circuit Court, S. D. New York. August 15, 1887.)*

PATENTS FOR INVENTIONS—NOVELTY—SELF-FEEDING LUBRICATORS.
 The claim of letters patent No. 106,150, granted August 9, 1870, for an improvement in self-feeding lubricators, is wanting in patentable novelty by reason of prior inventions of substantially the same form and character.

*Arthur v. Briesen* and *Antonio Knauth*, for plaintiff.
*Edmund Wetmore*, for defendant.

SHIPMAN, J. This is a bill in equity to restrain the defendant from the alleged infringement of letters patent No. 106,150, granted August 9, 1870 to William Gee, as inventor, for an improved self-feeding lubricator. The patentee's description, in his specification, of the nature and character of the invention, is as follows:

"The want of some means of observing the operation of self-feeding lubricators has long been recognized. With a view to provide for this want, and to facilitate the proper adjustment of the feed-regulating device, the reservoirs have been made of glass, or with glass sides, through which the quantity of oil contained therein might be seen; but the facility thus afforded for ascertaining whether the lubricator was feeding properly was very imperfect, as the action could only be determined by watching the gradual diminution of the level of the oil in the reservoir, which was necessarily tedious. The object of this invention is to provide for the better observation of the operation; and, to this end, it consists in the provision below the reservoir and the feed-regulating device, and the contracted orifice through which the oil escapes from the reservoir, of a chamber of such capacity that the oil or other lubricating material drips through the said chamber, instead of trickling down over the surface of the passage leading from the reservoir and feed-regulating device to the bearing or other device to be lubricated; such chamber having openings in its sides, or being partly constructed of glass, and thereby enabling the dripping of the oil within or through it to be distinctly

seen. In order to insure the dripping instead of the trickling of the oil or lubricating material from the reservoir through the said chamber, one feature of this invention consists in providing a teat around the orifice, through which the oil or lubricating material passes into the said chamber. Figure 1 in the drawing is a central vertical section of a lubricator with my improvement. Figure 2 is an elevation of the drip-chamber, detached from the reservoir and feed-regulating device. Similar letters of reference indicate corresponding parts in both figures. A is the reservoir; B the feed-tube; and C, the adjusting valve or plug for regulating the feed.

These are represented of a well-known construction, serving as well as any other to illustrate the application of my invention; but the reservoir and feed-regulating device may be of any other known or suitable construction, whereby a contracted orifice is provided at the bottom of the reservoir for the escape of the oil or other lubricating material. F, H, I, is the drip-chamber, arranged below the reservoir and feed-regulating device, and between the said device and the hollow stem, G, which is inserted into the support for the

lubricator. This chamber is formed, in part, of a hollow cylindrical shell of metal, F, which is made in the same piece with or attached to the bottom of the feed-tube, B, and in part by a socket, I, provided on the stem, G, the shell, F, screwing into this socket. To render the interior of the said chamber visible, holes, E, E, of suitable size, are provided in the sides of the cylindrical shell, F; and to prevent the entrance of dust, while still permitting the interior to be seen, the said shell is lined with a glass tube, H, or small plates of glass may be fitted to the holes, E, E, for the same purpose. At the top of the said chamber, surrounding the lower orifice of the feed-tube, is the teat, a, on which the oil or lubricating material collects to form the drip. The operation is as follows: The oil or other lubricating material, passing the feed-regulating valve or plug, C, collects in the lower part of the feed-regulating tube, until there is a sufficient accumulation at the lower orifice of the said tube to form a drip, which drips through the chamber, F, H, I, to the bottom thereof, whence it passes through the hollow stem, G, to the place to be lubricated. The dripping, taking place frequently, can be observed through the openings, E, E, of the chamber, and the quantity supplied can

be so easily determined as to enable the feed-regulating device to be properly adjusted. The delivery of the oil in drips is better insured by the teat, *a,* formed around the lower orifice of the feed-tube, or, by what would be equivalent, by the making of the interior of the upper part of the chamber of convex form. This invention differs from all other lubricators, not in allowing the oil to be seen, but in feeding with a visible drip, the frequency or cessation of which can be at once ascertained."

The claims are as follows:

"(1) The open or transparent drip-chamber, arranged below the reservoir and feed-regulating device, and in combination with the contracted opening through which the oil or lubricating material escapes from the reservoir, substantially as herein described, to provide for the dripping of the said material, and the view of the drip. (2) In combination with the drip-chamber and reservoir, the teat, *a,* substantially as and for the purpose specified."

From the patent it appears that the invention consisted of an open or transparent standard or chamber, below the oil reservoir and the contracted lower orifice of the feed-regulating device, of such capacity that the oil visibly drops through, and does not trickle down the sides of the chamber. The reservoir and feed-tube are old, unless the teat, *a,* surrounds the lower orifice of the feed-tube. The standard is an open or transparent stem in these lubricators which have stems by which they are attached to the bearings.

The question at the foundation of the case is whether, in view of the state of the art at the date of the invention, the improvement was patentable. It is clearly proved that in 1863, upon the steamer Merrimac, a vessel in the service of the United States government, and in 1867 upon the United States steamer Ontario, drip feed lubricators, made by Richard Lavery, were used, which, operated solely by gravity, were regulated by an ordinary spindle, and were elevated above the bearing which received the dripping oil so that the drip and the frequency of the drip were visible, but without any chamber surrounding the feed. In like manner, in 1850, William Burnett, formerly supervising inspector general of steam-vessels, used oil-cups which were raised or elevated above the shaft-bearings of steam-engines, and from which the oil dropped in separate drops upon the bearing, so that the number of drops could be ascertained by the eye, and the quantity could be regulated by the cock which controlled the discharge of the oil from the cup. These cups had no chamber below the bottom of the cup. In the provisional English specification of William Brookes, dated May 22, 1867, his lubricator is described as follows:

"The object of this invention is to obtain a more certain and continuous supply of lubricating matter to those parts of machinery which are subject to friction. To attain this object the reservoir containing the oil or lubricating matter is formed of glass or other transparent material, and at the base thereof it is attached to glass (or other transparent) pipe, in which is placed a supply cock for the purpose of regulating the supply, and having a nut at one extremity for the purpose of permanently adjusting it when properly fixed. Below this regulating supply cock is placed another similar cock for the purpose of cutting off the supply when needed, and thus dispensing with the necessity of closing and readjusting the first-mentioned cock. The second

one might be dispensed with if required. By making the reservoir of glass or other transparent material, the workman can at all times see when it requires replenishing, and the glass (or other transparent) pipe permits also of his observing any interruption in the continuousness of the supply to the machinery."

This description does not state that the lubricant dripped from the reservoir through the transparent pipe; it might have trickled down the sides of the pipe. I shall therefore assume that there was no drip-pipe which delivered the oil in separate drops into the transparent stem or chamber. I intentionally omit a discussion of the question whether John Absterdam used oil-cups, substantially like the patented invention, at No. 5 Haverhill street, and at the factory of J. J. Walworth & Co., in Boston, in 1853 and 1854, because upon this question there is the conflict of testimony which frequently arises in regard to the use of an inconspicuous object in a factory 20 or 30 years before the testimony was given, and I think that the case does not require a decision in regard to the correctness of Absterdam's recollection.

There were, then, prior to the date of Gee's invention, gravity lubricators which were elevated above the bearings to be oiled, and from which the oil dripped in separate drops upon the bearings, so that the quantity and frequency of the drip could be ascertained by inspection, but which had no chamber into or through which the oil dripped. The Brookes specification described a gravity lubricator which had a reservoir, and at its base a transparent chamber in which was a supply cock for the purpose of regulating the supply. The oil flowed into the transparent pipe, and was delivered to the journal or bearing to be lubricated; the chamber being for the purpose of enabling the engineer to observe and watch the flow of the oil. In my opinion there was no invention in making the Brookes supply cock discharge the oil through an orifice which should deliver a drip, and in thus producing the Gee lubricator. Neither would it require much if any more inventive genius to prevent the entrance of dirt into or the effect of wind upon the Lavery and Burnett lubricators by attaching to the bottom of each cup a transparent standard. After Lavery and Burnett had in a rough way shown the principle of a sight-feed oiler, it would not seem that invention was required to embody the principle in the neater form in which Gee presented it.

I place the decision especially upon the Brookes specification, and hold that, if it did not anticipate the Gee patent, it was so nearly like it that no invention was needed to make the simple alteration or addition which is said to distinguish the Gee device. The bill is dismissed.